UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| MEGHAN JOHNSON, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV-99-PT-3199-M |
| GAGE MERCHANDISING SERVICES, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This cause comes to be heard upon the parties' responses to this court's Order of December 18, 2000. The plaintiff filed her response on December 29, 2000, and the defendant filed its response on January 1, 2001.

### THE DECEMBER 18, 2000 ORDER

In its December 18, 2000 Memorandum Opinion and Order, this court instructed the parties to highlight:

"<u>admissible evidence</u> now in the record of:
<u>Defendant</u>- specific evidence supporting a claim of a "seniority system" as discussed above.
<u>Plaintiff</u>- male crew assistants who were allegedly paid more for the same or similar work or for equal work which requires equal skill, etc."

Memo Op., p. 39. The parties were also given leave to respond to each other's submissions.

### THE RESPONSES

**The defendant's response**

The defendant's response to the December 18, 2000 Order is: "Upon further review of

1

the case law as expounded upon by the court . . . [the defendant] recognizes . . . and respectfully admits that it does not appear to be entitled to summary judgment on the basis of the specific 'bona fide seniority system' defense under the EPA."[1]

**The plaintiff's response**

The plaintiff's response to this court's Order includes specific deposition testimony that the plaintiff was initially hired for the position of "crew assistant," and that her rate of pay was, at all times, $12.02 per hour. Lux, depo. at 56. The plaintiff also points to her own deposition testimony and the affidavit of a former supervisor, Glenda Cox, who stated that the plaintiff performed additional training and scheduling functions while she was also performing the duties of a crew assistant. Johnson, depo. at 114; Cox, affid. at para. 8. The plaintiff again highlights her own deposition testimony, in which she stated that none of the male crew assistants performed these additional functions. Johnson, depo. at 124-125, 243. As further support, the plaintiff presents the deposition testimony of former co-worker Bethany Stonebraker, who testified that "We all worked as crew trainers. We all changed positions pretty much at the same time. And then when there was a shortage of crew assistants, for whatever reason, we would be rotated back into crews to run certain shifts." Stonebraker, depo. at 25-26.[2]

The plaintiff next reproduces certain information from the "Chart of Crew Assistants," which she presented in her Brief in Opposition to Summary Judgment. The plaintiff claims that the chart of crew assistants "was produced by the defendant and composed by Jean Lux, the company representative, as represented by counsel for the defendant." The summary of the

---

[1] The defendant clarifies, however, that its admission does not indicate that it is waiving this defense for purposes of any potential trial.

[2] The court notes that Stonebraker's testimony tends to contradict the plaintiff's allegations that she was, at all times, a crew assistant who was performing, at all times, the duties both of a crew assistant and a trainer.

2

original chart, which listed names of crew assistants, their social security numbers, start-dates, and wages, contains the names of male employees who are supposedly crew assistants, as well as their hourly wage rate at an unspecified point in time. All of the employees listed appear to have earned a higher hourly wage than the plaintiff.

## THE REPLIES

### The defendant's replies to the plaintiff's evidence

The defendant first argues, as it argued in its Reply to Plaintiff's Opposition to Summary Judgment, that the plaintiff's use of crew assistants as comparators is an impermissible "late-shift" in her case theory. The defendant bases its argument on the plaintiff's deposition, the pertinent portions of which the defendant has reproduced in its Reply to Plaintiff's Response to the December 18 Order. In the deposition, the plaintiff and defense counsel had the following exchange:

> Q. I think you allege . . . that $12 per hour was proportionately lower than males. Is that your recollection?
> A. Males that were performing the same duties.
> Q. What males were those?
> A. The ones that– other males that were having to do the hiring and the training weren't called trainers. They were called "crew coordinators."

Johnson, depo. at 119. The defendant also points out that, when asked which specific males she was referring, to, the plaintiff identified only crew coordinators, specifically, Danny Johnson, Mike Smith, and William Spencer. Johnson, depo. at 119. Finally, the defendant highlights a later exchange between the plaintiff and defense counsel:

> Q. I want to make sure I understand your testimony. Is it your contention that because you were doing these hiring and training duties you should have been paid as a crew coordinator?
> A. I should have been equally paid with the males that were supposed to be performing the same kind of job I was.
> Q. Is that a yes or a no to my question?

3

>       A.      I don't know.
>       Q.      Let me ask it again, then. Is it your argument that because you were doing hiring and training duties that you should have been paid what a crew coordinator made?
>       A.      Yes.
>       Q.      Because you were doing hiring and training?
>       A.      No, because I was doing the same duties as a crew coordinator.

Johnson, depo. at 121-122. The defendant claims that it proceeded solely on the basis of what it considered to be the plaintiff's "Crew Coordinator theory." It attaches special significance to the fact that the crew coordinator theory was the only theory that the plaintiff espoused under oath.[3] It claims that the plaintiff gave no indication, after her deposition, that she intended to use male Crew Assistants as comparators until she filed her Opposition to Summary Judgment. According to the defendant, because the only group of comparators that the plaintiff purported to use to support her pay discrimination claims were determined by this court to be too dissimilar, the defendant deserves summary judgment on any remaining pay discrimination issues before the court.

The court notes that the plaintiff's amended complaint clearly alleges that she was paid proportionately less than the "male <u>assistant</u> crew coordinators who engaged in substantially similar job duties or less job duties than [the plaintiff]." Amended complaint, p. 12, para. 72 (emphasis added). The amended complaint also alleges that the plaintiff was paid proportionately less than the male crew coordinators. Amended complaint, p. 12, para. 74. The original complaint also alleges that the plaintiff was paid proportionately less than the male <u>assistant</u> crew coordinators. Original complaint, para. 50. It appears that, contrary to the

---

[3] The defendant, in essence, argues that the plaintiff, by discussing her crew coordinator theory in the deposition, thereby limited herself to only the "crew coordinator theory" of recovery. It argues that, through the deposition, the plaintiff effectively eliminated a count clearly pled in both the complaint and the amended complaint.

4

defendant's arguments, the comparison of the plaintiff to the male crew assistants has, from the beginning, been part of the plaintiff's case theory.

The defendant next argues that the "Chart of Crew Assistants," which the plaintiff presents as evidence that male crew assistants were paid more than she, is inadmissible.[4] This court, in its Memorandum Opinion in this case, noted that "[t]he chart does not, on its face, state by whom it was compiled, the records from which it was compiled, or the time at which it was compiled. The chart does not include Johnson, whose wages are hand-written at the bottom of the second page. The chart is the only piece of evidence that Johnson has proffered to indicate that she was paid less than other male crew assistants." Memo Op., p. 21. In her reply to the December 18 Order, the plaintiff presents a summary of this chart. She asserts in a single sentence that the chart was complied by Jean Lux, the defendant's human resources manager, and that it had been given to her by the defendant. This sentence is the only indication of the chart's origins. Nothing on the face of the chart indicates that Lux compiled it or that it was given to the plaintiff by the defendant. The defendant argues, in response, that the chart lacks a proper foundation, is unauthenticated, and is not accompanied by any authenticating affidavits. The defendant further contends that, because the chart is not authenticated, it constitutes inadmissible hearsay.

The defendant next argues that, even if the plaintiff has demonstrated a prima facie case of wage discrimination, it is still entitled to summary judgment based on the catch-all provision of 29 U.S.C. § 206(d)(1)(iv).[5] The defendant maintains that its evidence shows that each male

---

[4] The defendant previously presented this argument in its Reply to Plaintiff's Opposition to Summary Judgment.

[5] Section 206(d)(1)(iv) provides that the EPA does not prohibit pay disparities based on any reason other than the gender of the employees.

5

employee that the plaintiff uses as a comparator has had greater length of service either with the defendant or with CVS, one of the defendant's major clients, citing the Lux affidavit.[6] The defendant argues that this greater length of service also indicates that the male comparators have more job experience than the plaintiff, and are therefore entitled to higher wages. According to the defendant, both reasons are sufficient to allow the defendant to avail itself of section 206(d)(1)(iv).

Finally, the defendant argues that the plaintiff still has presented no evidence of intentional discrimination. The defendant emphasizes that proof of intent to discriminate is essential to the plaintiff's prima facie case under Title VII, citing <u>Meeks v. Computer Associates International</u>, 15 F.3d 1013 (11th Cir. 1994). Additionally, the defendant maintains that the plaintiff has offered no evidence that its proffered reasons for the wage disparity were pretextual. The defendant also argues that proof of an intent to discriminate is relevant to the issue of whether the defendant wilfully violated the EPA.[7]

**The plaintiff's replies to the defendant's response**

The plaintiff replies briefly to the defendant's response by arguing that, based on the defendant's acknowledgment of the lack of evidence of a suitable seniority system, the plaintiff should be granted summary judgment as a matter of law on both her EPA claims and her Title VII pay discrimination claims. The plaintiff cites to no authority.

---

[6] See Memo Op., p. 19, for this court's summary of the defendant's arguments regarding the differences in the wages of the male crew assistants and the plaintiff's wages.

[7] While the defendant acknowledges that the plaintiff may still have a triable EPA claim without evidence of wilful discrimination, it argues that, at the very least, without a showing of wilful behavior, she may not collect liquidated damages.

## CONCLUSION

This court has previously considered the defendant's motion for summary judgment and the plaintiff's motion for reconsideration. The court has recounted the substance of the above-referenced responses so as to have historical references in the file. The court will not, at this stage, change any previous ruling.

This 22 day of February, 2001

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE